# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: March 22, 2024

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| CHANTAL BANKS, | * | PUBLISHED |
| | * | |
| Petitioner, | * | No. 22-1206V |
| | * | |
| v. | * | Special Master Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Dismissal Decision; Failure to Prosecute; |
| AND HUMAN SERVICES, | * | Insufficient Proof. |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | * | |

<u>Leah VaSahnja Durant</u>, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.
<u>Dorian Hurley</u>, U.S. Department of Justice, Washington, DC, for Respondent.

### **DECISION**[1]

### I.     INTRODUCTION

On September 1, 2022, Chantal Banks ("Petitioner") filed a petition for compensation in the National Vaccine Injury Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 <u>et seq.</u> (2012).[2]  Petitioner alleges that she suffered from transverse myelitis ("TM") as a result of an influenza ("flu") vaccination on September 5, 2019.  Petition at Preamble (ECF No. 1).

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018) ("Vaccine Act" or "the Act").  All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

Based on the reasons set forth below, the undersigned **DISMISSES** this case for insufficient proof and failure to prosecute.

Moreover, the undersigned finds that Petitioner has failed to prove by preponderant evidence that the flu vaccine administered to her on September 5, 2019 caused any injury. See Althen v. Sec'y of Health & Hum. Servs., 418 F.3d 1274, 1280 (Fed. Cir. 2005). Thus, the undersigned finds Petitioner is not entitled to compensation.

## II.     BACKGROUND

### A.     Procedural History

On September 1, 2022, Petitioner filed a petition alleging that she suffered from TM as a result of a flu vaccine administered on September 5, 2019. Petition at Preamble. Petitioner filed medical records on October 6, 2022 and an affidavit on January 6, 2023. Petitioner's Exhibits ("Pet. Exs.") 1-13. The case was reassigned to the undersigned on February 2, 2023. Notice of Reassignment dated Feb. 2, 2023 (ECF No. 13). Petitioner filed additional medical records on May 22, 2023. Pet. Exs. 14-20.

Respondent filed a Rule 4(c) report on July 20, 2023. Respondent's Report ("Resp. Rept.") (ECF No. 24). In the report, Respondent argued that Petitioner lacked "preponderant evidence demonstrating the requisite facts to establish compensation for [P]etitioner's alleged injury." Id. at 19. Moreover, Respondent argued that "there is preponderant evidence in the medical record of an alternate cause of [P]etitioner's TM"—namely, Petitioner's underlying sarcoidosis.[3] Id. at 19. Respondent cited the notes of several of Petitioner's physicians that "rais[ed] [the] possibility of sarcoidosis as possible etiology" for Petitioner's TM. Id. (quoting Pet. Ex. 2 at 151).

The undersigned ordered Petitioner to file additional medical records by August 21, 2023, as well as "an expert report addressing the issues raised in Respondent's 4(c) report" by September 18, 2023. Order dated July 20, 2023 (ECF No. 25). Petitioner filed additional medical records on August 21, 2023. Pet. Exs. 21-22. Petitioner then filed an unopposed motion for extension of time to file the expert report. Unopposed Motion for Extension of Time, filed Sept. 19, 2023 (ECF No. 27). The undersigned granted the motion and ordered Petitioner to file an expert report by November 17, 2023. Order dated Sept. 20, 2023 (ECF No. 28). Petitioner filed a second unopposed motion for extension of time on November 17, 2023. Unopposed Motion for Extension of Time, filed Nov. 17, 2023 (ECF No. 29). The undersigned again granted the motion and ordered Petitioner to file an expert report by January 2, 2024. Order dated Nov. 20, 2023 (ECF No. 30). Petitioner failed to file an expert report by the January 2, 2024 deadline.

---

[3] Sarcoidosis is "a chronic, progressive, systemic granulomatous reticulosis of unknown etiology, characterized by hard tubercles []. It can affect almost any organ or tissue, including the skin, lungs, lymph nodes, liver, spleen, eyes, and small bones of the hands and feet." Sarcoidosis, Dorland's Online Med. Dictionary, https://www.dorlandsonline.com/dorland/definition?id= 44637 (last visited Mar. 21, 2024).

2

Instead, on January 3, 2024, Petitioner filed a status report. Pet. Status Rept., filed Jan. 3, 2024 (ECF No. 31). Petitioner reported that she had consulted with a "respected adult neurologist" about Petitioner's TM. Id. at 1. The expert averred that "he [was] unable to provide an opinion to a preponderance of evidence that [P]etitioner can satisfy [p]rong [two] of the applicable causation standard." Id. Citing the "in-depth discussion" with the expert and an assessment of the expert's medical evidence, Petitioner reported that she would not seek another expert report. Id. at 2. Petitioner thus requested the undersigned issue an entitlement decision on the case. Id.

On January 3, 2024, the undersigned ordered the parties to file any additional evidence, objections to closing the record, or any other objections to proceeding with adjudication by February 2, 2024. Order dated Jan. 3, 2024 (ECF No. 32). The undersigned stated that a lack of objections would enable the case to be ripe for adjudication. Id. As of March 22, 2024, no additional evidence or objections have been filed by the parties.

The matter is now ripe for adjudication.

**B.    Factual History**

Petitioner received a flu vaccine on September 5, 2019. Pet. Ex. 1 at 1. On September 24, 2019, Petitioner presented with a "burning" pain in her "left upper arm shoulder" to her primary care physician ("PCP"). Pet. Ex. 5 at 72. She was prescribed valacyclovir and instructed to take it if she developed a rash and magnetic resonance imaging ("MRI") was ordered. Id. at 74-75. Three days later, Petitioner went to the Ann Arundel Medical Center emergency department ("ED"), where the doctor noted her left shoulder pain which was "exacerbated with light touch," and that Petitioner had not taken the valacyclovir because no blisters developed. Pet. Ex. 2 at 695. On September 30, 2019, Petitioner returned to her PCP regarding her continued symptoms. Pet. Ex. 5 at 68. Petitioner's PCP sent her to the ED where she was given Neurotonin for pain relief and instructed to follow up with her PCP. Id. at 70-71; Pet. Ex. 2 at 651. Petitioner's PCP referred her for neurological examinations on October 7, 2019. Pet. Ex. 5 at 67. After several examinations by neurologists and radiologists, Petitioner was diagnosed with acute TM on November 20, 2019. Pet. Ex. 2 at 333; Pet. Ex. 7 at 22; Pet. Ex. 8 at 15.

Petitioner was hospitalized for three days while receiving additional imaging and a lumbar puncture. Pet. Ex. 2 at 330, 332, 342-44. Petitioner was discharged from the hospital with a diagnosis of TM on November 23, 2019. Id. at 342. On December 3, 2019, Petitioner was hospitalized again for two days before being discharged with a diagnosis of "longitudinally extensive" TM. Id. at 151-53. The doctors raised sarcoidosis as a "possible etiology" for her TM. Id. at 151, 158.

On December 11, 2019, Petitioner presented to Anne Arundel Medical Group Neurology Specialists where the examining neurologist noted the possibility of sarcoidosis and referred her to a pulmonologist. Pet. Ex. 5 at 302-03, 305. After examining Petitioner's medical history and computed tomography ("CT") scans, the pulmonologist noted that Petitioner's symptoms

3

"certainly beg[ged] the question of sarcoidosis versus paraneoplasia." Id. at 301.  On January 6, 2020, Petitioner received an endobronchial ultrasound ("EBUS") bronchoscopy, which revealed "non-necrotizing granulomatous inflammation consistent [with] sarcoidosis." Pet. Ex. 15 at 27, 203.

On January 15, 2020, Petitioner presented to Johns Hopkins Hospital ED and was "admitted to the neurology unit for management of TM likely secondary to sarcoidosis." Pet. Ex. 3 at 793.  The doctors at Johns Hopkins noted that Petitioner "present[ed] with [TM] flare" and required a cane to walk. Id. at 802-03.  After multiple MRI scans, the doctors noted that Petitioner had a "neurosarcoidosis flare" and ordered a course of intravenous ("IV") steroids. Id. at 806.  Petitioner completed a five-day course of IV steroids before being discharged from Johns Hopkins on January 21, 2020. Id. at 786-87.

On January 23, 2020, Petitioner returned to her PCP, who noted that Petitioner had been diagnosed with TM "most likely secondary to sarcoidosis" and had been "[c]onfirmed to have sarcoidosis with the hilar adenopathy." Pet. Ex. 5 at 56.

Petitioner regularly returned to her PCP to manage her back pain and check on her clinical status. See, e.g., Pet. Ex. 5 at 6, 14-22, 26, 30-32, 34, 38, 45, 52, 56.  Beginning on March 4, 2020, Petitioner also regularly visited Johns Hopkins for long-term management of her sarcoidosis. See, e.g., Pet. Ex. 3 at 475-78, 665-70, 740.

No other relevant medical records were filed.

### III. DISCUSSION

#### A. Dismissal for Failure to Prosecute

When a petitioner fails to comply with court orders to prosecute her case, the court may dismiss the case. Sapharas v. Sec'y of Health & Hum. Servs., 35 Fed. Cl. 503 (1996); Tsekouras v. Sec'y of Health & Hum. Servs., 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 819 (Fed. Cir. 1993); Vaccine Rule 21(c); see also Claude E. Atkins Enters., Inc. v. United States, 889 F.2d 1180, 1183 (Fed. Cir. 1990) (affirming dismissal of case for failure to prosecute for counsel's failure to submit pre-trial memorandum); Adkins v. United States, 816 F.2d 1580, 1583 (Fed. Cir. 1987) (affirming dismissal of cases for failure of party to respond to discovery requests).  The Vaccine Program has past precedent for dismissing cases due to a failure to prosecute with sufficient expert reports. See, e.g., M.G. v. Sec'y of Health & Hum. Servs., No. 17-743V, 2022 WL 1311661, at *21-22 (Fed. Cl. Spec. Mstr. May 3, 2022); Duncan v. Sec'y of Health & Hum. Servs., No. 16-1367V, 2020 WL 6738118 (Fed. Cl. Spec. Mstr. Oct. 19, 2020), mot. for rev. den'd, 153 Fed. Cl. 642 (2021); Stachlewitz ex rel. H.G.S. v. Sec'y of Health & Hum. Servs., No. 13-220V, 2014 WL 5293629 (Fed. Cl. Spec. Mstr. Sept. 23, 2014).

The undersigned ordered Petitioner to file "an expert report addressing the issues raised in Respondent's 4(c) report." Order dated July 20, 2023.  After receiving several extensions, Petitioner failed to file an expert report to address these issues. See Pet. Status Rept. at 1.  Petitioner attempted to retain an expert who could opine on all three Althen prongs but was

unable to do so. Id. at 1-2. Petitioner stated that she would not seek any further expert reports. Id. at 2.

Accordingly, the undersigned finds that Petitioner's inability to comply with court orders and to file sufficient expert reports constitute a failure to prosecute. Such a failure to prosecute warrants dismissal of the case. See, e.g., M.G., 2022 WL 1311661, at *21-22.

### B. Dismissal for Insufficient Evidence

To receive compensation under the Act, Petitioner must prove either (1) that she suffered a "Table Injury"—i.e., an injury falling within the Vaccine Injury Table—corresponding to one of her vaccinations, or (2) that she suffered an injury that was actually caused by the vaccine. See §§ 11(c)(1), 13(a)(1)(A).

Because Petitioner does not allege that she suffered a Table injury, she must prove that the vaccine she received caused her injury. To do so, she must establish, by preponderant evidence: (1) a medical theory causally connecting the vaccine and injury ("Althen prong one"); (2) a logical sequence of cause and effect showing that the vaccine was the reason for the injury ("Althen prong two"); and (3) a showing of a proximate temporal relationship between the vaccine and injury ("Althen prong three"). § 13(a)(1); Althen, 418 F.3d at 1278.

Petitioner must provide a sound and reliable medical or scientific explanation that pertains specifically to this case, although the explanation need only be "legally probable, not medically or scientifically certain." Knudsen v. Sec'y of Health & Hum. Servs., 35 F.3d 543, 548-49 (Fed. Cir. 1994). Petitioner cannot establish entitlement to compensation based solely on her assertions; rather, a vaccine claim must be supported either by medical records or by the opinion of a medical doctor. § 13(a)(1). When medical records do not establish entitlement to compensation, as they do not in this case, Petitioner must submit an expert medical opinion supporting the claim. Id.; see Lett v. Sec'y Health & Hum. Servs., 39 Fed. Cl. 259, 260-61 (1997). In determining whether Petitioner is entitled to compensation, the special master shall consider all material in the record, including "any . . . conclusion, [or] medical judgment . . . which is contained in the record regarding . . . causation." § 13(b)(1)(A).

Here, there are records to show that Petitioner received the flu vaccine, and that she was diagnosed with TM. See Pet. Ex. 1 at 1; Pet. Ex. 2 at 342; Pet. Ex. 3 at 802-03. But there are no records to show that Petitioner's TM was actually caused by the flu vaccine as required under Althen. See Althen, 418 F.3d at 1278. Moreover, there is no expert report by a qualified physician to opine as to causation. See § 13(a)(1); Lett, 39 Fed. Cl. at 260-61.

Petitioner did consult an expert neurologist who expressed that he was "unable to provide an opinion to a preponderance of the evidence that [P]etitioner can satisfy [p]rong [two] of the applicable causation standard." Pet. Status Rept. at 1-2. Moreover, the expert only expressed his opinion to Petitioner verbally and did not file a written report. Id.

5

Without evidence of causation, the undersigned finds that the record does not support a claim under the Vaccine Act, or otherwise include preponderant evidence demonstrating that Petitioner sustained any vaccine injury.

Further, Respondent raised an alternate cause of Petitioner's TM—Petitioner's underlying sarcoidosis.  Resp. Rept. at 19.  Respondent cited the notes of several of Petitioner's physicians that "rais[ed] [the] possibility of sarcoidosis as possible etiology" for Petitioner's TM.  Id. (quoting Pet. Ex. 2 at 151).

The undersigned acknowledges that Petitioner is not required to eliminate other potential causes in order to be entitled to compensation.  See Walther v. Sec'y of Health & Hum. Servs., 485 F.3d 1146, 1149-52 (Fed. Cir. 2007) (finding a petitioner does not bear the burden of eliminating alternative independent potential causes).  However, the undersigned finds it reasonable to consider "evidence of other possible sources of injury"—here, Petitioner's sarcoidosis—in determining "whether a prima facie showing has been made that the vaccine was a substantial factor in causing the injury in question."  Stone v. Sec'y of Health & Hum. Servs., 676 F.3d 1373, 1379 (Fed. Cir. 2012).

Accordingly, the undersigned finds that Petitioner has provided insufficient proof of her claim and such lack of proof warrants dismissal of the case.

### IV.   CONCLUSION

It is clear from the medical records that Petitioner has struggled with illness, and the undersigned has great sympathy for what she has endured due to her illness.  The undersigned's Decision, however, cannot be decided based upon sympathy, but rather on the evidence and law.

Accordingly, **this case is DISMISSED for insufficient evidence and failure to prosecute**.  In the absence of a timely filed motion for review pursuant to Vaccine Rule 23, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master
